

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

April 28, 2011

The Honorable Ricardo Ramos
Maverick County Attorney
208 Converse Street
Eagle Pass, Texas 78852

Opinion No. GA-0856

Re: Municipality's selection of a local newspaper for the purpose of publication of official notices (RQ-0919-GA)

Dear Mr. Ramos:

You pose several questions concerning the publication of legal notices by the City of Eagle Pass ("City") in view of the recent closure of the newspaper historically used for this purpose.[1] Chapter 2051 of the Government Code controls the selection of a newspaper where other law requires distribution of official notices in this manner but does not specify the manner of publication. TEX. GOV'T CODE ANN. § 2051.042(a) (West 2008). Section 2051.044 provides that a newspaper used to convey official notices must as a general matter:

> (1) devote not less than 25 percent of its total column lineage to general interest items;
>
> (2) be published at least once a week;
>
> (3) be entered as second-class postal matter[2] in the county where published; and
>
> (4) have been published regularly and continuously for at least 12 months before the governmental entity or representative publishes notice.

*Id.* § 2051.044(a). The immediately following sections set the legal rate for publication of the notice as the lowest published rate offered for classified advertising, and add and subtract requirements depending on the governmental entity attempting to convey notice. *Id.* §§ 2051.045, .046, .048, .051,

---

[1]*See* Letter from Honorable Ricardo Ramos, Maverick County Attorney, to Honorable Greg Abbott, Attorney General of Texas at 1–5 (Sept. 17, 2010), http://www.oag.state.tx.us/opin/index_rq.shtml ("Request Letter").

[2]The United States Postal Office changed the designation of "second-class" to "periodicals," but, as this office has previously recognized, the renaming did not effect a substantive change. *See* Tex. Att'y Gen. LO-96-084, at 3. Because section 2051.044 still uses the language "second-class," we also do so here.

.052. Notice published by a city is governed by section 2051.048 and, because this subchapter applies only where other law has not specified a manner of publication,[3] may be subject to additional statutory requirements, depending on the subject matter of the notice involved. *E.g.*, TEX. ELEC. CODE ANN. § 4.003(a)(1) (West 2010) (mandating notice by newspaper "published in the territory that is covered by the election" or in a "newspaper of general circulation in the territory if none is published in the jurisdiction").

Because the City believes it no longer has access to a newspaper that would fully satisfy the requirements of section 2051.044, it proposes to select as its official newspaper a local paper that has no second-class postal permit, and to inform City residents of this selection through the City's water and wastewater bills. *See* Request Letter at 2, 4–5. You ask about the City's options for publishing notices in the absence of a newspaper that satisfies section 2051.044. *Id.* at 1.

Under the express terms of chapter 2051, publication required under section 2051.048 must be in a newspaper that meets the requirements of section 2051.044. *See* TEX. GOV'T CODE ANN. § 2051.049 (West 2008). We cannot advise you that the City's proposal to use a paper that does not satisfy section 2051.044 would be lawful. *See* Tex. Att'y Gen. Op. No. H-1081 (1977) at 2 (declining to predict in advance about notice that did not fully satisfy section 2051.044).

Citing *Christy v. Williams*, you suggest that publication of a notice in a paper that only substantially complies with section 2051.044 might nonetheless be lawful. *See* Request Letter at 4; *see also Christy v. Williams*, 292 S.W.2d 348 (Tex. Civ. App.—Galveston 1956), *writ dism'd w.o.j.*, 298 S.W.2d 565 (Tex. 1957). *Christy v. Williams*, however, presented the question whether the results of an election would be invalidated after the fact on account of notice having been published in a newspaper that only substantially complied with section 2051.044's predecessor statute. *See Christy*, 292 S.W.2d at 350–52. While the court of appeals refused to invalidate the election, it did not consider (let alone endorse) the prospective validity of a notice knowingly published in a newspaper that did not satisfy the statutory requirements of a newspaper. Thus, the case does not serve to excuse prospective noncompliance with section 2051.044. *See* Tex. Att'y Gen. Op. No. H-1081 (1977) at 2 (stating that *Christy v. Williams* does not authorize "a city to ignore the clear language" of section 2051.044's predecessor).

You assert that no newspaper in the county fully satisfies all of the requirements in subsection 2051.044(a), noting in particular the requirement that the newspaper have a second-class postal permit in the county where published and ask what options the City has for publishing its notices. *See* Request Letter at 1, 5. We note that a newspaper satisfies subsection 2051.044(a)(3) so long as the newspaper holds its second-class postal permit in *the county in which the newspaper is released to the public*, irrespective of the county in which the notice is required to be published.[4] *See generally* Tex. Att'y Gen. Op. No. GA-0838 (2011) (discussing compliance with section 2051.044); *see also*

---

[3]*See* TEX. GOV'T CODE ANN. § 2051.042 (West 2008) (limiting applicability of subchapter).

[4]For example, assuming *the San Antonio Express-News* is released to the public in Bexar County, so long as it holds its second-class postal permit in Bexar County, it meets the requirement of subsection 2051.044(a)(3) for any county.

*Christy*, 292 S.W.2d at 352 ("A paper is published at the time and place where it is released to the public . . . .").

Accepting your conclusion as to the unavailability of a newspaper that would satisfy the remaining requirements of subsection 2051.044(a), section 2051.048 provides some guidance in that subsections 2051.048(c) and (d) direct a political subdivision where to publish if there is "no newspaper published in the political subdivision" that will publish the notice at the required rate. TEX. GOV'T CODE ANN. § 2051.048(c)–(d) (West 2008).

If there is no newspaper in the political subdivision that will publish the notice at or below the legal rate, subsection 2051.048(c) directs the political subdivision to publish its notice in a "newspaper that: (1) is published in the county in which the political subdivision is located; and (2) will charge the legal rate or a lower rate." *Id.* § 2051.048(c). If the county in which the political subdivision is located has no newspaper that will publish at the specified rate, subsection 2051.048(d) instructs the political subdivision to "post the notice at the door of the county courthouse of the county in which the political subdivision is located." *Id.* § 2051.048(d). Irrespective of rates, if there is no paper or publication in the political subdivision or county that meets the requirements of section 2051.044, then, by the express language of both of these provisions, there is no "*newspaper* published in the political subdivision [or county that] will publish the notice" as required. *Id.* § 2051.048(c)–(d) (emphasis added). Absent a newspaper described in subsections 2051.048(c) and (d), a political subdivision could avail itself of the alternative publication methods.

In addition, other statutes requiring the publication of specific notices expressly provide an alternative publication method. *See* TEX. ELEC. CODE ANN. § 4.003(a)(1)(B) (West 2010) (requiring notice of election to be given by publication in a newspaper published in the territory or "in a newspaper of general circulation . . . if none is published in the jurisdiction of the authority responsible for giving the notice"); TEX. TAX CODE ANN. § 26.06(c) (West Supp. 2010) ("The notice . . . may be delivered by mail to each property owner in the unit, or may be published in a newspaper."). If the City is required to publish a notice under such a statute, the City should follow the publication alternative in that particular statute. Absent other statutory alternatives, the Legislature may be called upon to provide additional publication methods.

### S U M M A R Y

A paper used for the publication of a political subdivision's notices must satisfy the requirements of section 2051.044, Government Code. We cannot advise you that the City's proposal to use a paper that does not satisfy section 2051.044 would be lawful.

Beyond the express publication alternatives provided in section 2051.048, Government Code, and other particular notice statutes, the Legislature may provide additional publication methods.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

JASON BOATRIGHT
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee